## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **YAMIL VEGA,** | : | |
| **Petitioner** | : | |
| | : | **No. 1:21-cv-1637** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **WARDEN BRADLEY,** | : | |
| **Respondent** | : | |

## MEMORANDUM

On September 23, 2021, *pro se* Petitioner Yamil Vega ("Petitioner"), who is currently incarcerated at the United States Penitentiary Canaan ("USP Canaan") in Waymart, Pennsylvania, initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging an incident report he received while incarcerated at the Federal Correctional Institution Estill ("FCI Estill") in Estill, South Carolina. (Doc. No. 1.) Petitioner paid the requisite filing fee on October 4, 2021. (Doc. No. 5.) In an Order entered October 4, 2021, the Court directed Respondent to show cause why Petitioner should not receive the relief he seeks. (Doc. No. 6.) Respondent filed his response on October 25, 2021. (Doc. No. 9.)

In an Order dated October 26, 2021, the Court directed Respondent to file a supplemental response addressing Petitioner's argument that the Bureau of Prisons ("BOP")'s Regional Office remanded the incident report in question for amendment

and that this has yet to be done.  (Doc. No. 10.)  Respondent moved for and was granted an extension of time, until November 16, 2021, to file the supplemental response.  (Doc. Nos. 11, 12.)  Meanwhile, Petitioner filed a traverse to the initial response on November 4, 2021.  (Doc. No. 13.)  Respondent filed his supplemental response on November 16, 2021.  (Doc. No. 15.)  Petitioner filed a traverse to the supplemental response on November 24, 2021.  (Doc. No. 16.)  Petitioner's § 2241 petition is, therefore, ripe for disposition.

## I.    BACKGROUND

On November 9, 2015, the United States District Court for the Southern District of Florida sentenced Petitioner to serve forty-three (43) months' incarceration for Hobbs Act robbery and a consecutive term of eighty-four (84) months' incarceration for brandishing a firearm in furtherance of a crime of violence. (Doc. No. 9-2 at 5-6.)  Petitioner, therefore, is serving an aggregate sentence of 127 months' incarceration.  (*Id.* at 6.)  His anticipated release date, with good conduct time ("GCT") factored in, is November 4, 2024.  (*Id.* at 7.)

### A.    Facts Regarding Incident Report #3188317

On November 3, 2018, Officer Thomas was conducting rounds in the AA unit at FCI Estill.  (*Id.* at 77.)  When she approached cell #128, she saw the two (2) inmates in the cell "handling multiple small pieces of folded white paper located on

2

the desk table top." (*Id.*)  Officer Thomas entered the cell and instructed the inmates to hand over the items; both inmates stated, "It's nothing!"  (*Id.*)  Petitioner handed over one piece of folded paper while concealing the others behind his back.  (*Id.*)  Officer Thomas instructed Petitioner to hand over the other pieces.  (*Id.*)  Petitioner rushed to the toilet, threw the other pieces of paper in, and flushed them.  (*Id.*)  Officer Thomas notified the Operations Lieutenant of the incident.  (*Id.*)  Later that day, SIS Technician S. Chambers tested the orange paper found inside the white paper.  (*Id.*)  The test revealed a positive result for heroin.  (*Id.*)

Officer Thomas issued Incident Report #3188317, charging Petitioner with a violation of Code 115, destroying and/or disposing of any item during a search or attempt to search.  (*Id.*)  Petitioner received a copy of the Incident Report on November 4, 2018. (*Id.*)  At that time, the investigating officer, Lieutenant Sheffield, notified Petitioner of his rights, and Petitioner stated, "I am requesting the items be sent to the lab.  I really don't know what it is."  (*Id.* at 78.)

The Incident Report was forwarded to the Unit Discipline Committee ("UDC") for further action.  (*Id.*)  The UDC hearing was conducted on November 9, 2018, at which time Petitioner was again advised of his rights and indicated that he understood them.  (*Id.* at 77.)  The UDC amended the Incident Report to include a violation of Code 113, possession of any narcotics.  (*Id.*)  The UDC referred the

3

Incident Report to the Disciplinary Hearing Officer ("DHO") for further proceedings. (*Id.* at 80.) At that time, Petitioner did not request a staff representative or any witnesses. (*Id.*)

On November 14, 2018, the DHO suspended the Incident Report "for a re-write for more supporting detail." (*Id.* at 71.) The Incident Report was not re-written until December 10, 2018, because of the reporting officer being on vacation. (*Id.* at 71, 72.) Because the delay extended beyond five (5) working days, the UDC requested an extension, which was approved by the Warden. (*Id.* at 71.) Petitioner was notified about the delay and the reason for an extension. (*Id.*) A copy of the rewritten Incident Report was given to Petitioner on December 11, 2018, and Lieutenant Barnett advised him of his rights at that time. (*Id.* at 72-73.) The UDC hearing was held on December 20, 2018. (*Id.* at 72.) Petitioner was advised of his rights at that time. (*Id.* at 74.) Petitioner requested that Dr. Binford serve as his staff representative and that a witness appear on his behalf. (*Id.* at 75.) The UDC referred the rewritten Incident Report to the DHO. (*Id.*)

Petitioner appeared before the DHO on December 27, 2018. (*Id.* at 67.) The DHO confirmed that Petitioner understood his rights. (*Id.*) Dr. Binford, the Chief Psychologist, appeared as Petitioner's staff representative and asked to know why it took so long for the reporting officer to rewrite the Incident Report. (*Id.*) Petitioner

was advised that the reporting officer was on leave.  (*Id.* at 68.)  During the hearing, Petitioner's witness, another inmate, appeared telephonically and stated that Officer Thomas said that "she had to re-write the shot to fix it."  (*Id.* at 67.)  Petitioner made the following statement, "I am not guilty.  I am guilty of 115 as I flushed the drugs. I don't know if that's my piece of paper.  It's a lie."  (*Id.* at 68.)

The DHO found Petitioner guilty of Code 113.  (*Id.* at 69.)  In doing so, the DHO considered the Incident Report, statements made by Petitioner and his witness, photographs, and a memorandum written by SIS Technician Chambers.  (*Id.* at 67-69.)  The DHO sanctioned Petitioner with disallowance of forty-one (1) days' GCT, forfeiture of forty-one (41) days of non-vested GCT, seven (7) days of disciplinary segregation, six (6) months' loss of commissary privileges, six (6) months' loss of visits (through June 26, 2019), and the restriction of visitors to immediate family only from June 27, 2019 through December 26, 2019.  (*Id.* at 69.)  Petitioner received a copy of the DHO report on January 9, 2019.  (*Id.* at 70.)

Petitioner appealed the DHO's finding that he had committed a violation of Code 1113.  (Doc. Nos. 2-9 through 2-17.)  On March 20, 2019, the Regional Director remanded the DHO's report for amendment.  (Doc. No. 2-9.)  On March 27, 2019, the DHO's report was amended to note that the DHO dropped the charge of violating Code 115 because staff had been able to recover the item in question.

(Doc. No. 15-1 at 3-6.)  Petitioner asserted that he did not receive a copy of the amended DHO report and, therefore, was not able to file an administrative appeal. (Doc. No. 1 at 8-13.)  On November 10, 2021, a copy of the amended Incident Report was delivered to Petitioner.  (Doc. No. 15-1 at 1.)

### B.    Summary of Petitioner's § 2241 Petition

Petitioner then filed the instant § 2241 petition.  (Doc. No. 1.)  In his petition, Petitioner argues that his due process rights were violated because: (1) he received the Incident Report more than twenty-four (24) hours after the incident; (2) he was not advised of his right to have the assistance of another inmate; (3) the UDC added a Code 113 offense; (4) the DHO did not expunge the rewritten Incident Report; (5) the rewritten Incident Report contained facts that wholly contradicted the original Incident Report; (6) Lieutenant Merrill was not authorized to conduct the DHO hearing; (7) there was not sufficient evidence to support the Code 113 finding; and (8) staff ignored a March 20, 2019 Order from the Regional Office for the DHO report to be amended.  (*Id.*)  As relief, Petitioner requests that the Court order the Bureau of Prisons ("BOP") to expunge the Incident Report or, alternatively, remand the matter for the BOP to conduct a new disciplinary hearing.  (*Id.* at 15.)

## II.    DISCUSSION

### A.    Exhaustion of Administrative Remedies

In his supplemental response, Respondent asserts that Petitioner's § 2241 petition should be dismissed because now that Petitioner has received a copy of the amended DHO report, he may appeal the disciplinary sanction and exhaust his remedies.  (Doc. No. 15 at 6-8.)

While § 2241 does not contain an explicit statutory exhaustion requirement, the United States Court of Appeals for the Third Circuit has consistently required a petitioner to exhaust his administrative remedies before filing a § 2241 petition. *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996).  Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Id.* at 761-62 (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)).  Thus, "a federal prisoner who . . . fails to exhaust his administrative remedies because of a procedural default, and subsequently finds closed all additional avenues of administrative remedy, cannot secure judicial review of his habeas claim absent a showing of cause and prejudice." *Id.* at 762.  Exhaustion, however, is not required

when it would not promote these goals, such as when exhaustion would be futile. *See, e.g.*, *Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998).

The BOP has a multi-step administrative remedy program allowing an inmate "to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). First, an inmate should attempt inform resolution of the issue with the appropriate staff member. *Id.* § 542.13(b). If informal resolution is unsuccessful, the inmate may submit a formal written grievance, using the BP-9 form, to the Warden within twenty (20) calendar days "following the date on which the basis for the Request occurred." *Id.* § 542.14(a). The Warden is to respond to the request within twenty (20) calendar days. *Id.* § 542.18. An inmate dissatisfied with the Warden's response may appeal, using the BP-10 form, "to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." *Id.* § 542.15(a). Finally, an inmate may appeal the Regional Director's response, using the BP-11 form, to the BOP's General Counsel "within 30 calendar days of the date the Regional Director signed the response." *Id.*

In response, Petitioner asserts that the "failure of any USP Canaan staff to properly deliver this alleged DHO report to him still means that he is unable to file his appeal/BP-10 if he so elects." (Doc. No. 16 at 4.) At this time, the Court declines

to dismiss Petitioner's petition for failure to exhaust his administrative remedies. The complete record from Petitioner's disciplinary proceedings is before the Court, facilitating judicial review of Petitioner's claims. The Court, therefore, considers the merits of Petitioner's § 2241 petition below.

### B.     Merits of Petitioner's Petition

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. *Torres v. Fauver*, 292 F.3d 141 (3d Cir. 2002). It is well settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court has held that that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. *Id.* at 557. Because Petitioner's sanctions included the loss of good conduct time, he has identified a liberty interest.

In *Wolff*, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary

evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418 U.S. at 563-67. The Supreme Court has held that the standard of review about the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985); *see also Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. *Hill*, 472 U.S. at 457. The *Hill* standard is minimal and does not require examination of the entire record, an independent analysis of the credibility of the witnesses, or even a weighing of the evidence. *See Thompson v. Owens*, 899 F.2d 500, 501-502 (3d Cir. 1989).

The BOP's inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq*., and entitled *Inmate Discipline and Special Housing Units*. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. *See Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff shall prepare an Incident Report when there is

reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. Under the regulations, an inmate "*ordinarily* receive[s] the incident report within 24 hours of staff becoming aware of . . . involvement in the incident." *Id.* § 541.5(a) (emphasis added). The incident is then referred to the UDC for an initial review pursuant to § 541.7.

The UDC review/hearing is "ordinarily [held] within five work days after [the incident report] is issued" and does not include the initial day staff learns of the incident, weekends or holidays. *Id.* § 541.7(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose any of the available sanctions set forth in 28 C.F.R. § 541.3 (Tables 1 and 2) except loss of good conduct time, disciplinary segregation, or monetary fine. *Id.* If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a DHO for a hearing. *Id.*

A DHO "will only conduct a hearing on the incident report if referred by the UDC." 28 C.F.R. § 541.8. An inmate will receive written notice of the charges 24 hours before the DHO hearing unless the inmate waives the notice requirement in which case the DHO can conduct the hearing sooner. *Id.* The inmate is permitted

11

to have a staff representative at the hearing and entitled to make a statement and present documentary evidence. *Id.* After the hearing, the DHO will either: (1) find the inmate committed the prohibited act or similar one described in the incident report; (2) find the inmate did not commit the prohibited act charged; or (3) refer the incident report back for further investigation, review and disposition. *Id.* If an inmate is found to have committed a prohibited act, the DHO can impose any of the available sanctions listed in Table 1 and 2 of § 541.3. *Id.* Finally, the written report or decision of the DHO will contain the following: (1) whether the inmate was advised of his or her rights during the proceedings; (2) the evidence relied on by the DHO; (3) the DHO's finding of guilt or innocence; (4) the sanctions imposed; and (5) the reasons for the sanctions imposed. *Id.*

### 1.    Petitioner Received His Due Process Rights

The record reflects that Petitioner received his procedural due process rights under *Wolff* and the BOP regulations. Petitioner received a copy of the original Incident Report on November 4, 2018. (Doc. No. 9-2 at 77.) After the matter was remanded for the report to be rewritten, Petitioner received a copy of the new Incident Report on December 11, 2018. (*Id.* at 72.) Petitioner appeared before the DHO on December 17, 2018, well more than twenty-four (24) hours after receiving the new Incident Report. (*Id.* at 67.) Chief Psychologist Binford appeared as

Petitioner's staff representative, and an inmate appeared as a witness on Petitioner's behalf. (*Id.*) Finally, Petitioner received a copy of the DHO's written decision, which included a review of the evidence relied upon and the rationale behind the disciplinary action, on January 9, 2019. (*Id.* at 70.)

Petitioner first asserts that he did not receive a copy of the Incident Report within twenty-four (24) hours of the incident, as required by 28 C.F.R. § 541.5. (Doc. No. 1 at 3-4.) As an initial matter, Petitioner received a copy of the original Incident Report a day after the incident occurred, on November 4, 2018. As noted *supra*, an inmate "*ordinarily* receive[s] the incident report within 24 hours of staff becoming aware of . . . involvement in the incident." 28 C.F.R. § 541.5(a) (emphasis added). However,

> § 541.5(a) is not mandatory in the sense that BOP officials *must* provide a copy of the incident report to a prisoner within 24 hours of the commission of the condition in question. Instead, 'ordinarily' is a discretionary term, and 'prison officials are given wide discretion to adopt and execute their policies needed to maintain internal order.'

*Wallace v. Fed. Det. Ctr.*, No. 12-cv-1217, 2012 WL 6604501, at *3 (E.D. Pa. Dec. 18, 2012) (quoting *Barner v. Williamson*, 233 F. App'x 197, 199 n.5 (3d Cir. 2007)), *aff'd*, 528 F. App'x 160 (3d Cir. 2013). Thus, the fact that Petitioner received the rewritten Incident Report more than twenty-four (24) hours after the incident does not constitute a due process violation.

Petitioner also asserts that he was never advised of his right to have assistance from a fellow prisoner. (Doc. No. 1 at 4, 6.) According to Petitioner, he was entitled to such assistance because "he is 'functionally illiterate' regarding these administrative processes and of their complexity." (*Id.* at 6.) The Supreme Court has noted that an inmate facing disciplinary proceedings is entitled to seek assistance from another inmate or staff member if the inmate himself is illiterate or "whether the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Wolff*, 418 U.S. at 570. As noted *supra*, however, Chief Psychologist Binford appeared as Petitioner's staff representative. Moreover, there is nothing in the record supporting a conclusion that Petitioner is illiterate or that the charge of violating Code 113 was so complex as to require assistance beyond what was provided to him.

Petitioner next argues that his due process rights were violated when the UDC illegally added a violation of Code 113 to the original Incident Report. (Doc. No. 1 at 4.) According to Petitioner, the UDC "did take it upon himself to illegally alter/amend an official [government] document." (*Id.*) Petitioner has not cited, and the Court has not located, any cases or regulations indicating that the UDC does not have the authority to add a code violation to the Incident Report. In any event, Petitioner has not demonstrated any prejudice from this addition. The UDC did not

14

find him guilty of the violation; instead, it was forwarded to the DHO for a disciplinary hearing, where Petitioner had the opportunity to present evidence on his behalf.

Petitioner suggests that his due process rights were violated because the DHO did not expunge the rewritten Incident Report and because the rewritten Incident Report contained facts that wholly contradicted the original Incident Report. (Doc. No. 1 at 4-5.) According to Petitioner, the DHO should have rewritten the original Incident Report "for staff failing to deliver [it to him] within 24 hours of staff becoming aware of the alleged 115 violation." (*Id.* at 4.) As noted *supra*, however, the fact that Petitioner received the rewritten Incident Report more than twenty-four (24) hours after the incident does not constitute a due process violation. Petitioner has not provided, and the Court has not located, any cases suggesting a right to have an Incident Report expunged if it is not delivered within twenty-four (24) hours of the incident in question. Moreover, upon review of the original and rewritten Incident Reports, the Court cannot conclude that the rewritten Incident Report contained facts that wholly contradicted those included in the original Incident Report.

Petitioner also suggests that his due process rights were violated because Lieutenant Merrill conducted the DHO hearing. (Doc. No. 1 at 7-8.) According to

Petitioner, Lieutenant Merrill was not authorized to conduct the hearing because he had previously vacated his DHO position to become a Lieutenant.  (*Id.* at 7.) Petitioner asserts that Lieutenant Merrill was not certified to serve as a DHO as required by 28 C.F.R. § 541.8(b).  (*Id.*)  Section 541.8(b) states only that the DHO "will be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident."  28 C.F.R. § 541.8(b).  Nothing in the record before the Court suggests that Lieutenant Merrill was a victim, witness, investigator, or significantly involved in the incident.  Petitioner has not presented any evidence suggesting why or how Lieutenant Merrill was not certified to conduct DHO hearings.  *See Hatten v. Bledsoe*, No. 1:11-cv-1051, 2012 WL 3027943, at *2-3 (M.D. Pa. May 15, 2012), *Report and Recommendation adopted*, 2012 WL 3027936 (M.D. Pa. July 24, 2012).

Petitioner also appears to attempt to assert a cause of action pursuant to 18 U.S.C. § 1001, based upon his belief that staff falsely stated that his disciplinary proceedings "not only adhered to the critical procedural and evidentiary requirements of BOP regulations but did also comply with Petitioner's constitutional rights and safeguards."  (Doc. No. 1 at 6.)  However, § 1001 is a criminal statute for which a private cause of action does not exist.  *Davis v. Jordan*, 573 F. App'x 135, 137 (3d Cir. 2014) (citing *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007)).

Moreover, there is no right to require the government to initiate criminal proceedings against an individual. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).

Finally, Petitioner avers that staff ignored the Regional Office's March 20, 2019 directive to amend the DHO report. (Doc. No. 1.) As noted *supra*, however, the DHO report was amended on March 27, 2019. (Doc. No. 15-1 at 6.) A copy of the amended DHO report was provided to Petitioner on November 10, 2021 because there was no record of him having received it previously. (*Id.* at 1.) Because the DHO report has been amended, Petitioner's claim regarding the failure to do so is moot. *See Marine v. Quintana*, 347 F. App'x 736, 737 (3d Cir. 2009).

In his response, Petitioner suggests that this assertion is not moot because he "should have received this amended DHO report within a reasonable amount of time and not almost 3 years later as the facts of this case reveal." (Doc. No. 16 at 2.) Petitioner also suggest that no staff member at USP Canaan ever "personally delivered the amended DHO report to him on Nov. 10, 2021." (*Id.* at 3.) However, a delay in providing the DHO report does not entitle an inmate to habeas relief unless the inmate can show that the delay was prejudicial to his appeal. *See Cook v. Warden, Fort Dix Corr. Inst.*, 241 F. App'x 828, 829 (3d Cir. 2007). Upon review of the record, the Court concludes that Petitioner has not demonstrated such prejudice. As noted *supra*, the DHO report was amended to explicitly note that the

17

DHO had dropped the charge of violating Code 115, which Petitioner was aware of when his disciplinary hearing occurred and when he received a copy of the initial DHO report.

In sum, Petitioner's claims that his due process rights were violated during these disciplinary proceedings lack merit. For the reasons discussed above, the Court finds that Petitioner received all the due process procedures to which he was entitled.

### 2.    The DHO Decision Was Based on Sufficient Evidence

With respect to the sufficiency of the evidence, Respondent has included the Incident Reports, the DHO report, SIS Technician Chambers' memorandum, and photographs of the evidence. (Doc. No. 9-2.) Respondent has also provided the amended DHO report. (Doc. No. 15-1.) These documents unequivocally establish that there was some evidence supporting the DHO's decision.

The DHO stated the following in his amended decision finding Petitioner guilty of Code 113:

> On December 27, 2018, the DHO found that you did commit the prohibited act of Code 113, Possession of any Narcotic, Marijuana, Drugs, or Alcohol. Due to staff recovering the item, the DHO did not feel it was necessary to pursue the charge for Code 115. Code 115, Destroying and/or Disposing of Item During a Search or Attempt to Search was dropped at the DHO's discretion.

This decision is based on the statement of the reporting officer, F. Thomas.  On Saturday, November 3, 2018, at approximately 8:30 AM, I, Officer F. Thomas conducted routine rounds in the AA unit.  Upon arriving at cell #128, I observed inmate [redacted] standing near the cell desk and [Petitioner] sitting on the bed near the cell desk.  Both inmates were observed handling multiple small pieces of folded white paper located on the desk table top.  I stepped inside the cell and instructed both inmates to hand the items over to me.  Both inmates stated to me, "It's nothing!"  Again, I instructed both inmates to hand over the items.  [Petitioner] handed over one piece of folded paper with his right hand, while trying to conceal the other pieces of paper in his left hand behind his back.  I instructed [Petitioner] to give me the other items concealed behind his back.  [Petitioner] then rushed to the toilet, threw the concealed items into the [toilet] and flushed them.  I unfolded the white piece of paper and it contained a piece of orange in color paper.  Inmate [redacted] did not attempt to destroy the evidence but had possession of the drugs.  I immediately exited the cell and secured the door with both inmates remaining inside and notified the Operations Lieutenant of the incident.  On Saturday November 3, 2018 at approximately 12:10 PM, SIS Technician, M. Chambers[,] tested the orange paper using NIK Test A.  Using NIK Test kit A, the substance turned the color purple, indicating to use NIK Test U.  Using NIK Test U, the substance turned the color of maroon, indicating to use NIK Test K.  Using NIK Test K, the substance turned the color green, then shifted to the color purple[,] giving a positive test result for Heroin.  The orange paper in question was discovered on the person of [Petitioner].

The evidence photograph was used to determine the orange substance discovered by the officer as described.

The supporting Memorandum by the SIS Tech Chambers was used to determine the substance was tested using the NIK Test kits and showed a positive reading for Heroin[].

When you were given a chance to make a statement you said, "I am not guilty.  I am guilty of 115 as I flushed the drugs.  I don't know if that's my piece of paper.  It's a lie."

Your staff representative did inquire as to why it took so long for Officer Thomas to re-write the incident report. The roster showed Officer Thomas was out of work on leave.

Your witness, [redacted] was given a chance to make a statement [and] he said: "She (Officer Thomas) stated that she had to re-write the shot to fix it."

The DHO based the decision on the greater weight of the evidence provided by the officer's report, photograph, memorandum, and your statement. The reporting officer was specific in stating while conducting routine rounds in the AA unit, she arrived at your cell #128 and observed you handling multiple small pieces of folded white paper located on the desk table top. She instructed you to hand the items over. You handed over one piece of folded paper then rushed to the toilet and threw the additional items into the [toilet] and flushed them. The unfolded white piece of paper contained a piece of orange in color paper that was tested by SIS staff utilizing the NIK Test Kits. The orange substance gave a positive test result for Heroin. The DHO took into consideration the evidence photograph and supporting memorandum to determine the orange substance discovered by the officer as described was tested properly using the NIK Test kits and showed a positive reading for Heroin[]. The DHO took into consideration your statement that the officer was lying and you were not guilty of possessing the drugs, but admitted to flushing drugs down the toilet. You did not provide, nor did the DHO find[,] any credible evidence to identify the officer had fabricated the account of the incident against you. The officer has the legal obligation to report nothing less than a factual description of what took place, and would suffer the consequences if found to have provided anything other than the truth. Additionally, the officer has no apparent vested interest to wrongly implicate you and writing this report created addition[al] work. You[,] on the other hand, would lie to avoid the repercussions of your actions. The DHO took into consideration your witness' statement the writer re-wrote the incident report to "fix it." The DHO can send the report back to be re-written in order to provide you with additional details to adequately defend yourself. You advised the DHO this did not interfere with your ability to defend yourself. The DHO took into consideration your staff

representative's statement regarding the amount of time you spent in SHU awaiting the re-written incident report. The staff member was on leave. In addition, you were advised the UDC was held beyond the normal time frame, but the Warden did provide approval to proceed with the disciplinary process. You advised this did not interfere with your ability to defend yourself. Based on the greater weight of the evidence stating that you handed over to staff a substance that tested positive for Heroin[], you were in possession of drugs, and there is enough to support the charge of 113.

Based on the officer's report, photographs, staff memorandum, and your statement, the DHO concluded Code 113, Possession of any Narcotic, Marijuana, Drugs, or Alcohol was appropriate and warranted.

(Doc. No. 15-1 at 4-5.) Moreover, the DHO explained the imposed sanctions, stating:

The action/behavior on the part of any inmate to use/possess/introduce drugs or alcohol threatens not only the health, safety and welfare of himself, but that of all other inmates and staff within the institution. The mere presence of drugs/alcohol in a correctional facility creates an environment conducive to violence. In the past, inmates under the influence of drugs/alcohol have become violent towards others, which cannot and will not be tolerated. The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behavior at all times.

Disallowance of Good Conduct Time and Forfeiture of Non Vested Good Conduct time was sanctioned because of the severity of the offense and to deter this activity in the future. It is apparent your conduct reflects poor institution adjustment and does not warrant the same consideration for good conduct time as those inmates following the rules and regulations of the Bureau of Prisons. This is also a mandatory sanction for your sentencing guidelines. The sanction for disciplinary segregation was imposed due to the severity of your offense. It is apparent that your adjustment in population has been poor

up to this point.  Hopefully, this sanction will influence your future decisions to commit an offense such as this.

. . .   The DHO took into consideration you were in SHU on Administrative Detention for an extended time awaiting this hearing when sanctioning the amount.

The sanction for loss of commissary privilege was imposed due to your poor institutional adjustment and behavior.  Privileges are meant for those inmates who follow rules and regulations and do not present a management problem for staff or pose a threat to the security of the institution, self, or others.  This sanction has been imposed to correct the present inappropriate behavior and deter future behavior of this type.  The DHO hopes that the sanctions will motivate you toward more self-discipline in the future.

The sanction imposed involving the loss of visiting privilege was taken to enforce the standard of inmates being held responsible for their actions.  It is believed, and past evidence has supported, that drug contraband is introduced into the inmate population through the inmate visiting room.  The DHO found that drugs and other contraband are not given to inmates through authorized channels, and, therefore, must be introduced from outside elements such as inmate visitors.

(*Id.* at 6.)

Petitioner suggests that there is not sufficient evidence to support the DHO's finding because staff cannot use NIK test kits to test paper.  (Doc. No. 1 at 9.) Petitioner avers that SIA Wiggins told him that "staff could not use the NIK test kits to test paper and that is per the policy/regulation." (*Id.*)  Petitioner references an Incident Report that he received on April 19, 2018, charging him with a violation of Code 113, after another slip of orange paper was tested and the result was positive

for methamphetamine.  (*Id.* at 10; Doc. No. 2-8 at 1.)  According to Petitioner, the Court should infer that these pieces of orange paper were "one in the same," yet the NIK test results "greatly differ."  (Doc. No. 1 at 10.)  He suggests that this evidence "is surely enough to have made the DHO pause and give great consideration to these conflicting test results and especially when the alleged orange pieces were the exact same substance (Suboxone)."  (*Id.*)

When an inmate challenges the sufficiency of the evidence supporting the DHO's decision, "the 'some evidence' standard does not require . . . independent assessment of the credibility of witnesses or weighing of the evidence." *Speight v. Minor*, 245 F. App'x 213, 216 (3d Cir. 2007) (quoting *Hill*, 472 U.S. at 455-56).  As an initial matter, Petitioner has presented no evidence regarding SIA Wiggins' alleged statement.  Moreover, nothing in the record suggests that Petitioner requested to present this evidence during his DHO hearing.  *See Gomez v. Warden Allenwood FCI*, 842 F. App'x 785, 787 (3d Cir. 2021) (concluding that there was no evidence in the record that the inmate-petitioner requested access to video footage before or during his DHO hearing); *Laor v. Fed. Bureau of Prisons*, No. 08-3532, 2009 WL 1410728, at *6 (D.N.J. May 15, 2009) (concluding that the inmate-petitioner was not denied an opportunity to present documentary evidence at his

disciplinary hearing because "there [was] no indication in the DHO Report that he made any specific request[s] for documents that were denied").

Moreover, under a theory of constructive possession, courts have "uniformly held that the discovery of contraband in a shared cell constitutes 'some evidence' of possession sufficient to uphold a prison disciplinary sanction against each inmate in the cell, including depriving that inmate of his or her liberty interest in good time credits." *Denny v. Schultz*, 708 F.3d 140, 145 (3d Cir. 2013).  The record before the Court establishes that Petitioner admitting to flushing drugs down the toilet, and that the orange piece of paper that tested positive for heroin was found on his person. Thus, contrary to Petitioner's suggestion, "some evidence" supports the DHO's conclusion that he was guilty of violating Code 113.  *See id.*

## 3. CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner was accorded all of his due process rights under *Wolff* and that there was some evidence supporting the decisions made by the DHO.  Accordingly, Petitioner's § 2241 petition (Doc. No. 1) will be denied.  An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge

Dated:  November 30, 2021

24